Harold McCLINTON, Jr., Appellant,

v.

The STATE of Texas.

No. 587–01.

Court of Criminal Appeals of Texas.

Dec. 10, 2003.

R. Scott Shearer, Houston, for Appellant.

Betty Marshall, Assistant State's Attorney, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

The opinion was delivered PER CURIAM.

Appellant was convicted of possession of cocaine and sentenced to twelve years in prison. Twenty days after his conviction and sentencing, the trial judge modified McClinton's sentence to ten years in prison. The Court of Appeals affirmed.[1]

We granted the State's petition for discretionary review to address whether a trial court has the power to reform a defendant's sentence after the defendant has already begun serving the sentence. We have determined that our decision to grant

---

**1.** *McClinton v. State*, 38 S.W.3d 747, 751 (Tex.App.-Houston [14th Dist.] 2001).

review was improvident. Therefore, the petition is dismissed.

COCHRAN, J., filed a concurring opinion.

HERVEY, J., filed a dissenting opinion in which JOHNSON, J., joined.

COCHRAN, J., concurring.

This case is a mess.

We granted the State's ground for review which reads, "Does a trial court have the power to reform a defendant's sentence after the defendant has already begun to serve the sentence?" In the abstract, that question is easily answered: Yes, a trial court has the power to reform a defendant's sentence after the defendant has already begun to serve the sentence if such a reformation is authorized by law.[1] But that abstract question is not really the issue in this case. The real issue is whether a trial court may, by means of a docket entry, reform or modify a sentence twenty days after the original sentence had been orally imposed in open court, and whether it may do so without any record request by the parties, without any record indication that the State was present to object, and without statutory authorization.

But we do not get to that question because the appellant aptly argues that the court of appeals lacked jurisdiction to even consider this issue as the State failed to file a notice of appeal. The State certainly had a right to appeal the trial court's modification of the sentence under article 44.01(a)(2),[2] but it did not do so. In this Court, the State did not respond to this preliminary jurisdictional issue. Therein lies a problem.

I.

Appellant was arrested in 1997 during a drug raid. On August 19, 1998, a jury found him guilty of possession of cocaine. On that same day the trial court orally sentenced him in open court to twelve years imprisonment. Appellant filed a notice of appeal that same day and the trial court set an appeal bond in the amount of $30,000. Twenty days later, on September 8, 1998, the trial judge entered a written docket order which read:

[I]t appearing to the Court that the ends of justice will best be served by a reformation of the judgment herein from 12 years in the Texas Department of Corrections to 10 years in the Texas Department of Corrections.

There is no indication in the record that this docket entry was made in response to any motion filed by either appellant or the State. There is no indication in the record that this new or modified sentence was orally pronounced or that the State was

---

1. In some instances the trial court has express statutory authorization to modify a sentence which has been previously imposed. For example, under article 42.12, § 6, of the Code of Criminal Procedure the trial court has continuing jurisdiction in a felony case to modify or reform his original sentence of imprisonment and place a defendant on community supervision under certain specified circumstances.

   Clearly a trial court has plenary jurisdiction over a case for at least the first thirty days after sentencing because it has the authority to receive a motion for new trial (or motion in arrest of judgment) within that time period

and to resolve the merits of that motion within 75 days after sentencing. See Tex.R.App. P. 21 & 22; see, e.g., State v. Bates, 889 S.W.2d 306, 309 (Tex.Crim.App.1994). The question here is not whether the trial court had jurisdiction to perform any act, but rather whether he had legal authority to perform a certain act-to modify, reform, change, or assess a new sentence twenty days after the original sentence had been imposed.

2. Under article 44.01(a)(2) of the Code of Criminal Procedure, "[t]he state is entitled to appeal an order of a court in a criminal case if the order ... arrests or modifies a judgment."

given any opportunity to address the trial court's authority to enter such an order.

Appellant raised three points of error in his direct appeal, each of which was rejected by the court of appeals.[3] The State did not file a notice of appeal or raise an official cross-point in its brief, but it did argue that the trial court's reformation of appellant's sentence from twelve years to ten years constituted an unauthorized grant of a new trial as to punishment only. It contended that the trial court lacked jurisdiction to reform its sentence within the plenary period and requested affirmative relief by reimposing the original sentence pronounced in open court.

The Houston Court of Appeals noted the procedural problem of addressing the State's complaint which requested affirmative relief when it had "filed neither a notice of appeal nor raised a cross-point in this appeal."[4] Observing that another court of appeals had, under similar circumstances, addressed the State's complaint, the Houston Court of Appeals examined the State's contention that the trial court lacked jurisdiction to reform its sentence within the plenary period.[5] The court of appeals then concluded that "[w]hile this is not a settled area of the law, we agree with our sister court that 'a trial court has inherent power to vacate, modify or amend its own rulings.'"[6] It concluded, therefore, that the trial court merely amended a "ruling" within its plenary power and overruled the State's complaint.[7]

We granted review to resolve this unsettled area of the law, but we cannot do so in this case.

## II.

It is well established that a trial court's oral pronouncement of a sentence in open court *is* the sentence imposed. The written judgment or a docket entry is "merely the written declaration and embodiment of that oral pronouncement."[8] As we recently explained:

> The rationale for that rule is that the imposition of sentence is the crucial moment when all of the parties are physically present at the sentencing hearing and able to hear and respond to the imposition of sentence. Once he leaves the courtroom, the defendant begins serving the sentence imposed.[9]

Thus, a trial court does not have the statutory authority to impose one sentence orally to the defendant and then, at some later date, enter a different, greater or lesser, sentence in his written judgment outside the defendant's or State's presence.[10] Such a system would create havoc: a trial judge could orally pronounce sentence in open court while the defendant and his family and friends, a possible victim and his family and friends, and the prosecutor are all present, then later modify, alter, or amend that sentence when no one else was present to object. A defendant who thought he was to serve a ten year sentence would eventually discover that, instead, his sentence has been modi-

**3.** *McClinton v. State,* 38 S.W.3d 747 (Tex. App.-Houston [14th Dist.] 2001).

**4.** 38 S.W.3d at 750.

**5.** *Id.* (citing *State v. Clemmer,* 999 S.W.2d 903, 905 (Tex.App.-Amarillo 1999, pet. ref'd)).

**6.** *Id.* at 751 (citing *Verdin v. State,* 13 S.W.3d 121, 123 (Tex.App.-Tyler 2000, no pet.)).

**7.** *Id.*

**8.** *Ex parte Madding,* 70 S.W.3d 131, 135 (Tex. Crim.App.2002); *Coffey v. State,* 979 S.W.2d 326, 328 (Tex.Crim.App.1998).

**9.** *Ex parte Madding,* 70 S.W.3d at 135.

**10.** *Id.* at 136.

fied to twelve years, or the State would eventually discover that the sentence of twelve years, made in open court, had now been modified to ten years. Such a system would be unfair to both parties and to society at large. Such a system would inject an intolerable level of uncertainty into the sentencing process and would prevent any sentence from becoming "final" until the trial court's plenary authority had expired.

A trial court has the inherent authority to alter, modify, or vacate its rulings, but it does not have the inherent authority to alter, modify, or vacate a sentence imposed in open court without statutory authorization and without the presence of the parties.[11]

## III.

Did that happen in this case? Who knows. The trial court's docket sheet reflects that appellant and his counsel appeared in court on September 8th, twenty days after sentence was orally imposed, and that the trial judge made a docket entry "reforming" appellant's sentence.[12] There is no reporter's record of proceedings from that date. If the State had been present and informed of the trial court's action, it could have objected on the record and filed a timely notice of appeal. If the State was not a participant in this September 8th proceeding, it would not have been aware of its right to object or appeal a modification of the sentence under article 44.01(a)(2).[13] Does the State forfeit its right to complain on appeal to a procedure that it was unaware of or to a proceeding in which it did not participate? That question, albeit interesting, is not before us given the nature of the State's petition for discretionary review and the decision of the court of appeals.

The court of appeals did, rightly or wrongly, address the merits of the State's complaint despite the fact that the State did not file a timely notice of appeal under article 44.01(a)(2) nor even a cross-point concerning a ruling on a question of law under article 44.01(c).[14] Although I doubt that the "reformation" of a sentence via a docket entry is, in fact, a ruling on a question of law, the trial court's authority to make such a reformation certainly is a question of law.

Like Judge Hervey, I believe that both trial and appellate courts may always take

---

**11.** See id. and n. 3.

**12.** The numerous docket entries showing pretrial resets are rubber stamped and read "The Defendant _____ appeared in person with counsel _____" and those blanks are filled in with pen. The docket entries made during the trial and at the sentencing hearing on August 19th are also rubber stamped and state that the defendant, his named counsel, and a named prosecutor were all present in court. On September 8th, the same rubber stamp used for pretrial resets was again used. There is no other indication that I can find in the record concerning the presence or participation of a prosecutor on September 8th.

**13.** The State, however, has never contended that it was not present and participating in the September 8th proceeding.

**14.** See generally 43A GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE· CRIMINAL PRACTICE AND PROCEDURE § 43.243 at 544 (2d ed.2001), in which Professors Dix and Dawson note that article 44.01(c) gives the State an extensive right to cross-appeal legal rulings, but that the court of appeals should normally address those cross-appeals only if the State is able to implement a decision in its favor, i.e., only if the defendant wins his appeal and a retrial, or some further proceedings in the trial court, is necessary. There are, according to Professors Dix and Dawson, some exceptions to that general rule, and occasionally the State "will be able to benefit from relief even if none is given to the defendant," because "a defendant has no right to even a wrongful trial court victory where that can be remedied without offending other important values." Id. at n. 9. The State does not argue that this is one of those instances.

cognizance of an illegal or unauthorized sentence, with or without the prompting of the parties.[15] I also believe that our holding in *Ex parte Madding* is a two-way street. The sentence that is imposed in open court with both parties present controls over a written judgment that conflicts with that oral pronouncement. Regardless of whether, under certain circumstances, a trial court has the inherent authority to modify a sentence previously imposed, it does not have the inherent authority to modify, alter, or vacate a valid sentence orally imposed solely by means of a later written judgment or docket entry.

Here, however, I doubt whether this Court has jurisdiction to consider the merits of the State's ground for review. Appellant argues that the court of appeals did not have jurisdiction to address the State's complaint about the trial court's "reformation" of the sentence because the State could have appealed had it so chosen. And it did not do so. Therefore, goes the argument, if the court of appeals did not have jurisdiction to address the State's complaint, we do not have jurisdiction to review the merits of the court of appeals' decision affirming the trial court's action. We do, I would imagine, have jurisdiction to decide whether the court of appeals had jurisdiction to entertain the State's complaint. But neither the State nor appellant has briefed this issue.

A trial or appellate court may always notice and correct an illegal or unauthorized sentence if it otherwise has jurisdiction over the case. As we recently held in *Mizell v. State*,[16] "[t]here has never been anything in Texas law that prevented *any* court with jurisdiction over a criminal case from noticing and correcting an illegal sentence."[17] But, of course, neither the ten nor twelve year sentences assessed in this case are "illegal" or unauthorized by law.

The State does not argue that the ten year sentence itself was illegal. Rather, the State's position is that the trial court simply did not have the power, jurisdiction, or authority to modify or change the original sentence because "McClinton had already accepted his August 19, 1998, sentence and suffered punishment under it before September 8, 1998."[18] Or, had he?

---

15. *See infra*, op. at 775 (Hervey, J., dissenting).

16. 119 S.W.3d 804, 2003 Tex.Crim.App. LEXIS 715 (Tex.Crim.App.2003).

17. *Id.* at 806.

18. The State relies upon a long line of cases from this Court which has held that any attempt to reform or modify a defendant's sentence after he has suffered punishment under the sentence originally imposed is "null and void." *See, e.g., Ex parte Reynolds*, 462 S.W.2d 605, 608 (Tex.Crim.App.1970) (holding that "it was beyond the power of the court ... to add a cumulation order onto the last sentence imposed after the petitioner had suffered punishment under the sentence originally imposed"); *Ex parte Brown*, 477 S.W.2d 552, 554 (Tex.Crim.App.1972) (trial court's resentencing order making sentences cumulative entered after defendant had been imprisoned for two months was invalid; "[s]uch a belated attempt at altering the terms of a defendant's sentence [is] null and void of effect"); *Blackwell v. State*, 510 S.W.2d 952, 956 (Tex.Crim.App.1974); *Williams v. State*, 145 Tex.Crim. 536, 170 S.W.2d 482, 486 (1943); *Powell v. State*, 63 S.W.2d 712, 713 (Tex.Crim.App.1933).

These cases all deal with an *increase* in punishment, not a *decrease*. Should that same rule, originally based upon due process and double jeopardy considerations, apply equally to a downward modification of sentence? Or, as Judge Hervey suggests, should it be jettisoned entirely? *See infra*, at 777–778 (Hervey, J., dissenting). The questions of whether this is a rule without a current rationale and thus should be jettisoned or whether it is a "one-way street" prohibiting only an increase in punishment or a "two-way street" prohibiting any modification are not directly before us and have not been briefed by the parties.

That, too, is hard to tell from this record. The term "accepted his sentence" usually describes the situation in which a defendant does not file an appeal because he either expressly waives his right to appeal or fails to file notice of appeal within the statutory time frame.[19] Here, appellant did file his notice of appeal on the very day he was sentenced so it cannot be said that he "accepted" his sentence. Furthermore, I cannot tell from this record whether appellant actually began serving his sentence on August 19th, the date he was originally sentenced, because the trial judge set an appeal bond at the same time appellant filed his notice of appeal.[20]

In sum, the record in this case is insufficient to address adequately either the preliminary jurisdictional question or the real issue in this case. Thus, although this is an unsettled area of the law which deserves clarification, I reluctantly concur in the court's dismissal of this petition for discretionary review as improvidently granted.

**19.** *See Ex parte Reynolds*, 462 S.W.2d at 607, in which this Court stated:

Article 42.09, V.A.C.C.P., provides that the sentence shall begin to run on the day the same is pronounced in cases where no appeal is taken. Petitioner claims he expressly inquired of the court as to its intentions, accepted the concurrent sentences, gave no notice of appeal and commenced the service of such sentences before the order of cumulation was entered.

*See also Tenon v. State*, 563 S.W.2d 622, 623–24 (Tex.Crim.App.1978) (defendant "waived filing notice of appeal and was ready to accept sentence"); *Goss v. State*, 161 Tex.Crim. 37, 39, 274 S.W.2d 697, 699 (1955) (noting that "[a]ppellant did not appeal his first conviction but accepted his sentence").

**20.** A supplemental Clerk's Record contains a bondsman's affidavit of surrender which indicates that the appeal bond was executed on *August 20, 1998, but that nine months after* appellant filed his notice of appeal he was again in jail on a new felony drug charge and his bond in that case was $100,000. It would

HERVEY, J., dissenting in which JOHNSON, J., joined.

I respectfully dissent. I would decide that, during its plenary jurisdiction, a trial court may modify (up or down) a defendant's sentence that the trial court has previously imposed and that this modification is not a "ruling on a question of law" for purposes of Article 44.01(c), TEX.CODE. CRIM.PROC.[1] I would, however, also decide that a trial court may not so modify a defendant's sentence after a party has filed a notice of appeal.

A jury convicted appellant of possessing between four and 200 grams of cocaine. On August 19, 1998, the trial court sentenced appellant to twelve years in prison pursuant to an agreement between the prosecution and appellant. That same day the trial court set an appeal bond in the amount of $30,000, and it signed a judgment which reflected appellant's sentence of "12 years TDC." Appellant also filed a notice of appeal that day. The next day on August 20, 1998, appellant apparently was released on bond.[2]

seem a rational inference that appellant may have spent one night in jail between his sentencing and the execution of the appeal bond, but this is far from clear. Furthermore, does serving one day of a twelve year sentence automatically and rigidly cut off a defendant's right to request modification or reformation of his sentence if such a modification were otherwise authorized by law?

**1.** Article 44.01(c) entitles the state to appeal "a ruling on a question of law if the defendant is convicted in the case and appeals the judgment."

**2.** The record does not clearly reflect whether appellant was released on bond on August 20, 1998. The supplemental clerk's record contains an affidavit of surrender document from appellant's bail bondsman dated May 20, 1999, surrendering appellant's appearance bond that the affidavit states was executed on August 20, 1998. The affidavit further states that appellant's appearance bond was being surrendered because appellant was in the county jail charged with delivering a con-

On September 8, 1998, the trial court modified its August 19th judgment to reduce appellant's sentence from twelve to ten years.[3] The record is silent on the reason for this except for a notation in the trial court's September 8th modification order stating that "the ends of justice will best be served by a reformation of the judgment herein from 12 years in the Texas Department of Corrections to 10 years in the Texas Department of Corrections."

Appellant raised three points of error in his direct appeal in the Court of Appeals. *See McClinton v. State*, 38 S.W.3d 747, 749–50 (Tex.App.-Houston [14th Dist.] 2001). None of these points challenged the trial court's modification of appellant's sentence. The State's appellate brief responded to these points and also contained a section entitled "Modification of Judgment and Sentence" in which the State claimed that the trial court's modification of appellant's sentence constituted a new trial as to the punishment phase of the trial and was, therefore, "void."[4] The State requested the Court of Appeals to reform the trial court's judgment by deleting the trial court's order modifying appellant's sentence. The Court of Appeals treated the "Modification of Judgment and Sentence" section in the State's brief as a "State's Appeal" under Article 44.01(c) and decided that the trial court "had the power to *modify* its sentence within the time of its plenary power." *See McClinton*, 38 S.W.3d at 751. (Emphasis in Original).

The State claimed for the first time in its discretionary review petition that the trial court could not modify appellant's sentence because appellant had already begun to serve his sentence.[5] We exercised our discretionary authority to address this claim.

Appellant claims that the trial court could modify its judgment to decrease appellant's sentence but not to increase it. Appellant also makes a jurisdictional claim that the Court of Appeals should not have even addressed the State's challenge to the trial court's modification of appellant's sentence because the State's "appeal" in the Court of Appeals was not authorized by any provision in Article 44.01. The State does not respond to this jurisdictional claim which we must address. *See State v. Roberts*, 940 S.W.2d 655, 657 (Tex.Cr.App. 1996) (issue of jurisdiction is "fundamental and cannot be ignored"), *overruled on other grounds, State v. Medrano*, 67 S.W.3d 892, 903 (Tex.Cr.App.2002).

Though not clear, it appears that the State's position all along has been that it did not have to file an appeal pursuant to any provision in Article 44.01 to present the issue of whether the trial court could modify appellant's sentence because the State could obtain review of this issue under the rule that "an appellate court has authority to reform a judgment" to "make the record speak the truth when the matter has been called to its attention by any source." *See French v. State*, 830 S.W.2d 607, 609 (Tex.Cr.App.1992) (court of ap-

---

trolled substance offense. Neither of the briefs filed here assert that appellant was released on bond on August 20, 1998.

**3.** Article 44.01(a)(2), Tex.Code Crim.Proc., entitles the State to appeal a trial court's order that "modifies a judgment."

**4.** *See State v. Hight*, 907 S.W.2d 845, 846–47 (Tex.Cr.App.1995) (trial court cannot grant new trial as to punishment phase of trial).

**5.** The State's brief asserts that, when the trial court on September 8th modified appellant's August 19th sentence, appellant had already suffered punishment under the August 19th sentence because appellant "had already accepted" his August 19th sentence. The State does not say exactly how appellant "had already accepted" his August 19th sentence.

peals properly granted State's motion to reform trial court's judgment to include the jury's affirmative deadly weapon finding); *Asberry v. State,* 813 S.W.2d 526, 531 (Tex.App.-Dallas 1991, pet. ref'd) (*en banc* ); Tex.R.App.Proc. 43.6 (court of appeals may make any appropriate order that the law and the nature of the case require). This rule, however, does not apply here because the record does "speak the truth." It clearly and truthfully reflects what the trial court did. The issue of whether the trial court could do it is not subject to an application of Rule 43.6.

It has been suggested that the trial court's modification of appellant's sentence is, for purposes of Article 44.01(c), a ruling on a question of law on a jurisdictional point. But, in modifying appellant's sentence, the trial court made no ruling on any question of law. And, Article 44.01(c) literally does not provide for an appeal even on a jurisdictional point in the absence of a ruling on a question of law.[6]

We have recently decided, under an application of our "void" sentence jurisprudence,[7] that an appellate court may on its own, notice an illegal sentence and "rectify that error." *See Mizell v. State,* 119 S.W.3d 804, 805, 806 (Tex.Cr.App. 2003). The sentence in *Mizell* was illegal because it fell outside the statutory permissible range of punishment and was, therefore, unauthorized by law. *See Mizell,* at 806. Appellant's sentence, however, falls within

the statutory permissible range of punishment and is, therefore, authorized by law.

So, if appellant's sentence is illegal, it must be because no law authorized the trial court to modify it. The question upon which we granted review is, therefore, properly presented on discretionary review since it is relevant to whether the Court of Appeals on its own could have addressed the issue of whether appellant's modified sentence is an illegal sentence. *See Mizell,* at 805.

The State claims that this Court's decisions in *Williams v. State* and *Powell v. State* stand generally for the proposition that a trial court cannot modify a defendant's sentence once the defendant has begun to serve it. *See Williams v. State,* 145 Tex.Crim. 536, 170 S.W.2d 482, 486 (1943) (trial court powerless to change its judgment "in any substantial respect" when the accused "has suffered some punishment as a result thereof"); *Powell v. State,* 124 Tex.Crim. 513, 63 S.W.2d 712, 713 (1933). *Powell,* however, states the rule to be:

> It seems to be well established by the authorities in other states that a court has power to revise, correct, or vacate a sentence imposed during the term of the court in which the conviction was had and before the original sentence has gone into operation or action is had under it. Regarding such power after the sentence has gone into operation, the general rule is set forth in the notes in

---

**6.** It is, therefore, unnecessary to decide in this case whether the State must file a notice of appeal to appeal a ruling on a question of law under Article 44.01(c). *See Malley v. State,* 9 S.W.3d 925, 927 (Tex.App.-Beaumont 2000) (holding that the state must file notice of appeal to perfect appeal under Article 44.01(c)).

**7.** *See Heath v. State,* 817 S.W.2d 335, 339 (Tex.Cr.App.1991) (op. on reh'g) (sentences not authorized by law are illegal and "void,"

therefore, unauthorized by law probation order was an illegal sentence), *overruled in part, Ex parte Williams,* 65 S.W.3d 656 (Tex.Cr. App.2001) (unauthorized by law probation order was not an illegal sentence); *but see Fortune v. State,* 745 S.W.2d 364, 371 (Tex.Cr. App.1988) (Campbell, J., dissenting) (criticizing the Court's occasional lack of analysis and resort to that talismanic label "void" before which "everything quakes and eventually tumbles to earth").

A.L.R. (Annotated) at page 1203, as follows: "It seems to be well established that a trial court is without power to set aside a sentence after the defendant has been committed thereunder, and impose a new or different sentence **increasing** the punishment, even at the same term at which the original sentence was imposed. A judgment which attempts to do so is void, and the original judgment remains in force."
*See Powell*, 63 S.W.2d at 713 (emphasis supplied).[8]

*Williams* primarily relied on this Court's decision in *Turner v. State*, 116 Tex.Crim. 154, 31 S.W.2d 809 (1930). Both *Powell* and *Turner*, as well as the ALR article [9] referred to in *Powell*, relied heavily on the United States Supreme Court's decision in *Ex parte Lange*, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1874). *Lange*, therefore, appears to be the genesis of the rule that the State claims applies here.

In *Lange*, the trial court's judgment imposed on the defendant a sentence of imprisonment for one year and a fine, but the applicable statute authorized only one of these two punishments. *See Lange*, 21 L.Ed. at 875–76. The defendant paid the fine. *See id.* Five days later, the trial court vacated its original judgment and signed another order resentencing the defendant to imprisonment for one year. *See id.* The Supreme Court decided that when the defendant "had **fully** suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone." *See Lange*, 21 L.Ed. at 878–79

(emphasis supplied). *Lange* also decided that the defendant had been "twice punished for the same offense" in violation of double jeopardy principles. *See Lange*, 21 L.Ed. at 878; *but see Lange*, 21 L.Ed. at 886–87 (Clifford, J., dissenting) (double jeopardy clause "cannot now be enlarged to help out a predetermined unsound judicial conclusion"); *United States v. Busic*, 639 F.2d 940, 946 fns 6, 7, 949 (3rd Cir. 1981).

*Lange* is factually different from this case and cases like *Powell* because the defendant in *Lange* had **fully** served one of the sentences authorized by the applicable statute and also because *Lange* did not involve altering (up or down) a defendant's sentence. *See Busic*, 639 F.2d at 949. Cases like *Powell*, therefore, erred to rely on *Lange* for the rule that they adopted and applied. *Lange* simply has no application to cases like this.

And even if it did, the United States Supreme Court in *United States v. DiFrancesco* recognized that *Lange* never stated the principle that a "trial court may not *increase* a sentence" during the same court session even "if the defendant has begun service of his sentence." *See United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328, 346–47 (1980) (emphasis in original); *see also Busic*, 639 F.2d at 949 (discussing the discredited *Lange* decision). *DiFrancesco* confined *Lange* to *Lange's* "specific context" and also recognized that double jeopardy principles do not necessarily prohibit a trial court from increasing a defendant's sen-

---

**8.** It would, therefore, appear that *Powell's* rule literally does not apply here since the trial court modified its judgment to **decrease** appellant's sentence. *See Powell*, 63 S.W.2d at 713. It would also appear that *Williams* effectively read the "increasing the punishment" language out of the *Powell* rule by stating that the trial court cannot "change the judgment in any substantial respect" once the

defendant "has suffered some punishment." *See Williams*, 170 S.W.2d at 486.

**9.** *See Power of Court to Set Aside Sentence after Commitment*, 44 A.L.R. 1203, 1203–1210 (1926) (trial court without power to set aside a sentence after defendant has been committed thereunder and impose a new or different sentence increasing the punishment).

777

tence. *See DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d at 347 (stating that the holding in *Lange* is "not susceptible of general application" and limiting *Lange* to its specific context).

Finally, the A.L.R. article cited in *Powell* (for the proposition that a trial court cannot increase a defendant's sentence after the defendant has begun to serve it) contains a collection of cases holding that a trial court can decrease a defendant's sentence. *See* 44 A.L.R. at 1210–11. This article also contains a collection of cases holding that a trial court cánnot decrease (or increase) a defendant's sentence because a trial court's power to decrease a defendant's sentence would also include the power to increase it which potentially could be "despotic and most oppressive." *See id.*

> It cannot be doubted, I think, that the practice claimed, although it might be a great relief to the mind of a judge, would to a great extent be destructive to one of the objects of punishment, namely, the reformation of the offender. Let it be understood that he may have a portion of his sentence remitted any day by the judge, he will occupy his thoughts with the expectation, daily and hourly, and scheme and labor for the result. In such a state of mind reformation would be out of the question. His term of punishment would always be an uncertainty to him. A practice fraught with such results could scarcely have its origin in any considerable amount of experience in dealing with convicts, and ought to be regarded as an argument against its existence altogether.... There is still another difficulty in the way, and that is not removed by the assumption that it would never occur. Bad or weak men might be found, to set aside such a presumption if made; and that is, **that if a sentence may be reconsidered during its execution, why may it not be increased as well as**

**diminished,** if the maximum had not been reached in the first instance? If reconsidered, it is to be *pronounced de novo;* and it is within the same power, exactly, to increase or decrease it. It is not difficult to imagine times in which the rule might thus become despotic and most oppressive.

*See id.* (Emphasis in italics in original) (Emphasis in bold added).

Since *Williams* and *Powell* were supported by *Lange* which has been undermined by *DiFrancesco,* then *Williams* and *Powell* should be overruled. *See Awadelkariem v. State,* 974 S.W.2d 721, 725 (Tex. Cr.App.1998) (one consideration in deciding whether to overrule precedent is when the precedent under consideration "conflicts with a newer decision that is found to be more soundly reasoned"). *Lange* never supported the rule applied in these cases, anyway. *See DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d at 347; *Busic,* 639 F.2d at 949. I would hold that, since no statute prohibits it from doing so, a trial court may modify (up or down) the sentence that it has originally imposed so long as the modified sentence falls within the statutory permissible range.

Notwithstanding all of this, there remains another jurisdictional issue that neither party has raised but which also must be addressed. That issue involves the trial court's jurisdiction to modify appellant's sentence after appellant filed his notice of appeal. We have recognized that trial courts have broad powers "to change, set aside or otherwise control their judgments" during their plenary jurisdiction. *See, e.g., State v. Johnson,* 821 S.W.2d 609, 612 (Tex.Cr.App.1991) (citing with favor *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398–99 (Tex.1979); *Awadelkariem,* 974 S.W.2d at 728–29 (Meyers, J., concurring)). The trial court's power to modify appellant's sentence in this case falls under

those broad powers. But these powers are limited after a party files a notice of appeal. *See id.* I would decide that the trial court could not modify appellant's sentence after appellant filed his notice of appeal. *See id.* This does not mean that appellant's modified sentence is "void," it simply means that the trial court lost jurisdiction to modify appellant's sentence once appellant filed his notice of appeal.

I would, therefore, reform the trial court's judgment to delete appellant's modified sentence. I respectfully dissent.